IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

U.S. WATER SERVICES, INC.,          :

    Plaintiff,                  :

v.                                  :
                               Civil Action No. GLR-14-347

INTERNATIONAL CHEMSTAR,             :
INC., et al.,
                          :

    Defendants.                 :

                          :

**MEMORANDUM OPINION**

THIS MATTER involves Defendants International Chemstar, Inc. ("Chemstar") and Ronald L. Leach's alleged inducement of employees and customers from Plaintiff U.S. Water Services, Inc. ("U.S. Water"). Pending before the Court are Defendants' Motion to Dismiss Complaint (ECF No. 16) and U.S. Water's Motion for Expedited Discovery (ECF No. 23). The Court, having reviewed the pleadings and supporting documents, finds no hearing necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, Defendants' Motion will be granted in part and denied in part. U.S. Water's Motion will be denied.

## I.   BACKGROUND[1]

U.S. Water and Chemstar are competitors in an industry that provides water treatment products and services to industrial and

---

[1] Unless otherwise noted, the facts are taken from the Complaint, accepted as true, and viewed in the light most favorable to the nonmoving party, U.S. Water.

commercial customers.   For approximately sixteen years, Mr.
Leach worked for a third competitor, Water Chemical Service,
Inc. ("Waterchem"), who is not a party in this case.   During his
tenure at Waterchem, Mr. Leach worked as a sales representative,
manager, and a member of the board of directors.

In early 2013, U.S. Water and Chemstar began discussions
regarding U.S. Water's possible acquisition of Chemstar.   During
the discussions, the parties executed a Non-Compete Agreement on
February 17, 2013.   The Non-Compete Agreement includes a
provision that states, "Each Party will not attempt to induce or
encourage an individual to leave the employment of the other
Party and will not hire an individual who is currently employed
by [the] other Party even if approached by such individual
seeking employment for a period of up to 12 months."   (Compl. ¶
12, ECF No. 1; see also Defs.' Mot. to Dismiss ["Defs.' Mot."]
Ex. C, Attach. 1, ECF No. 16-4, at 7).   The proposed
acquisition, however, never materialized.

After discussions with Chemstar dissipated, U.S. Water
focused on a possible acquisition of Mr. Leach's then-employer,
Waterchem.   By October 21, 2013, U.S. Water and Waterchem
executed a Stock Purchase Agreement finalizing U.S. Water's
acquisition of Waterchem.   As a result, all of Waterchem's
employees, including Mr. Leach, became U.S. Water employees.
U.S. Water's President met with Mr. Leach at Waterchem's office

on November 1, 2013, welcomed him to U.S. Water, and informed him that he would not need to sign a new employment agreement because his Waterchem agreement continued to be in effect.[2]   One of the forms Mr. Leach signed to become a U.S. Water employee, however, was an Employee Acknowledgement Form provided with the employee handbook.   The form states, among other things, "I have entered into my employment relationship with USWS voluntarily and acknowledge that there is no specified length of employment.   Accordingly, either I or USWS can terminate the relationship at will, with or without cause, at any time."   (Defs.' Mot. Ex. B, Attach. 2, ECF No. 16-3 at 17).

Although Mr. Leach confirmed his intent to remain with U.S. Water on November 5, 2013, he resigned without notice three days later and contacted Chemstar immediately thereafter.   The next

---

[2] Mr. Leach's employment agreement with Waterchem, executed on October 6, 1997, contains four provisions that are of particular importance in this case: (1) the notice provision, "This Agreement may be terminated by either party on sixty (60) days prior written notice to the other party."; (2) two non-solicitation provisions stating Mr. Leach shall not, "solicit, on behalf of anyone other than [Waterchem], orders for equipment or services similar to those which are provided by [Waterchem] at the date of such termination, from any person, firm, company or other entity which is or was at any time within one (1) year prior to such date, a customer of [Waterchem]," or "solicit, encourage or entice away from [Waterchem] (or attempt to do so) any officer or employee"; and (3) one non-disclosure provision that states Mr. Leach shall not "make use of, disclose or divulge to any third person any information of a proprietary, secret or confidential nature relating to any business of [Waterchem]."   (Defs.' Mot. Ex. B, Attach. 1 ["Employment Agreement"], ECF No. 16-3 at 6 & 9).

day, on November 9, 2013, Mr. Leach forwarded Chemstar an email from Waterchem's former owner encouraging Mr. Leach to remain with U.S. Water, forwarded new customer information to his personal email account in lieu of sending it to Waterchem, called three Waterchem technicians about potential employment opportunities, and offered to assist at least one of the technicians in acquiring a job.  Around November 11, 2013, Mr. Leach began his employment with Chemstar.

In January 2014, GSH, Mr. Leach's largest account at Waterchem, sent written notice to U.S. Water that it was discontinuing its relationship with the company.  Prior to receiving this notice, GSH expressed its displeasure with learning about U.S. Water's acquisition of Waterchem from Chemstar representatives who knew that Mr. Leach was joining Chemstar.  According to U.S. Water, four other long-term Waterchem customers have discontinued their relationships with U.S. Water, resulting in lost annual revenue of approximately $375,000.  (See Pl.'s Mem. Supp. Mot. for Expedited Discovery at 4, ECF No. 24).

After originally filing suit in the United States District Court for the District of Minnesota and voluntarily dismissing the action without prejudice (see Defs.' Mem. Supp. Mot. to Dismiss at 1-2, ECF No. 16-1), U.S. Water filed suit against Defendants in this Court on February 4, 2014.  (ECF No. 1).

4

U.S. Water's four-count Complaint alleges breach of contract—employment agreement (Count I) against Mr. Leach as well as breach of contract—non-compete agreement (Count II), tortious interference with employment agreement (Count III), and tortious interference with prospective economic relations (Count IV) against Chemstar.  U.S. Water and Defendants filed their pending Motions on March 13, and May 8, 2014, respectively.

## II.  DISCUSSION

### A.  <u>Defendants' Motion to Dismiss</u>

#### 1.  Standard of Review

Defendants move to dismiss U.S. Water's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, the court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true.  <u>See</u> <u>Harrison v. Westinghouse Savannah River Co.</u>, 176 F.3d 776, 783 (4th Cir. 1999) (citing <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action[, however,] will not do." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v.</u>

<u>Twombly</u>, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557) (internal quotation marks omitted).

A motion to dismiss is properly converted into a motion for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed.R.Civ.P. 12(d). The court, however, "may properly consider documents 'attached or incorporated into the complaint,' as well as documents attached to the defense motion, 'so long as they are integral to the complaint and authentic.'" <u>Bourgeois v. Live Nation Entm't, Inc.</u>, --- F.Supp.2d ---, No. ELH-12-cv-00058, 2014 WL 936841, at *9 (D.Md. Mar. 20, 2014) (quoting <u>Philips v. Pitt Cnty. Mem'l Hosp.</u>, 572 F.3d 176, 180 (4th Cir. 2009)). Defendants have attached several exhibits to their Motion to Dismiss. The Court, however, will only consider Mr. Leach's Employment Agreement and Employee Acknowledgement Form, and the Non-Compete Agreement between U.S. Water and Chemstar. Because these documents are integral to the Complaint and their authenticity has not been challenged, Defendants' Motion will not be converted into one for summary judgment.

## 2.   Analysis

Defendants seek to dismiss U.S. Water's Complaint in its entirety for failure to state a claim. Defendants' overarching argument is that U.S. Water's allegations are bare and void of the factual specificity required to overcome a dismissal motion. The Court agrees in part, and will grant Defendants' Motion as to Counts II and IV, but will deny the Motion as to Counts I and III.

### a.   Counts I and III

In Count I, U.S. Water alleges that Mr. Leach breached his Employment Agreement by engaging in certain competitive activities within the year following his termination, disclosing and using Waterchem's confidential business information, and failing to provide sixty days advance notice of resignation. (Compl. ¶ 26). Defendants contend this count should be dismissed because U.S. Water fails to specify how Mr. Leach violated the agreement, aside from failing to provide advanced notice of his resignation, and because the sixty-day notice requirement became obsolete upon Mr. Leach's signing of the Employee Acknowledgement Form.

U.S. Water has sufficiently alleged that Mr. Leach violated the non-disclosure and non-solicitation provisions of his Employment Agreement. According to U.S. Water, Mr. Leach informed Chemstar that Waterchem was being acquired and

disclosed information about Waterchem's customers (Compl. ¶ 17), forwarded messages from Waterchem's former owner to Chemstar (id. ¶ 19), sent new customer information to his personal email account without sending it to Waterchem (id.), and contacted three different Waterchem technicians about potential employment opportunities (id.). These facts, accepted as true for the purpose of this Motion, sufficiently support U.S. Water's breach of contract claim.

Moreover, at this juncture, Defendants' argument that the Employee Acknowledgement Form renders the sixty-day notice requirement in the Employment Agreement obsolete must fail. Section 15 of Mr. Leach's Employment Agreement states it may only be modified in a writing "signed by the party against which enforcement of the [modification] is sought." (Employment Agreement at 11). The lack of U.S. Water representative signatures on the Employee Acknowledgement Form, coupled with U.S. Water's allegation that it informed Mr. Leach that the Waterchem Employment Agreement still applied, disfavors a grant of Defendants' Motion at this time. Furthermore, there is no evidence in the record that suggests U.S. Water intended for the Employee Acknowledgement Form to dissolve the sixty-day notice requirement.

Similarly, U.S. Water has sufficiently alleged Count III. To state a claim of tortious interference with an existing

contract under Maryland law, a plaintiff must allege five elements: (1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damage to the plaintiff.  See K&K Mgmt. v. Lee, 557 A.2d 965, 986 (Md. 1989).

Defendants aver that U.S. Water fails to state a claim because Mr. Leach did not breach the Employment Agreement, they did not cause any Waterchem employees or customers to abandon U.S. Water, and none of Chemstar's actions caused damage to U.S. Water.  The basis of U.S. Water's tortious interference claim in Count III, however, is Chemstar's alleged inducement of Mr. Leach to breach his Employment Agreement, thereby causing U.S. Water to suffer loss profits and "other consequential damages." (Compl. ¶¶ 34-37).  Furthermore, because Count I remains, Defendants' first argument fails.  Aside from these preliminary matters, U.S. Water alleges sufficient facts to overcome dismissal at this juncture.

Therefore, the Court will deny Defendants' Motion to dismiss Counts I and III.

### b.   Count II

In Count II, U.S. Water alleges Chemstar violated the Non-Compete Agreement when it induced Mr. Leach to leave U.S. Water

for Chemstar.   (See Compl. ¶¶ 30-31).   Chemstar argues this count should be dismissed because the plain language of the Non-Compete Agreement excludes Mr. Leach.   The Court agrees.

Under Maryland law, "When the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used."  Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC, 829 A.2d 540, 546 (Md. 2003) (citing Langston v. Langston, 784 A.2d 1086, 1095 (Md. 2001)); see also Middlebrook Tech, LLC v. Moore, 849 A.2d 63, 79 (Md. 2004) ("When a contract's language is expressed in clear and unambiguous terms, the court will not engage in construction, but will look solely to what was written as conclusive of the parties' intent." (citing Adloo v. H.T. Brown Real Estate, Inc., 686 A.2d 298, 304 (Md. 1996)).

The Non-Compete Agreement provides, in relevant part, "Each Party will not attempt to induce or encourage an individual to leave the employment of the other Party and will not hire an individual who is currently employed by [the] other Party even if approached by such individual seeking employment for a period of up to 12 months."  (Compl. ¶ 12) (emphasis added).  U.S. Water avers that this language includes any employee it acquired within twelve months of signing the Non-Compete Agreement.  U.S. Water's interpretation of the contract, however, ignores the

document's plain language.  The Non-Compete Agreement clearly applies to employees who were employed by U.S. Water and Chemstar at the time of execution on February 17, 2013.  Because Mr. Leach did not join U.S. Water until the fall of 2013, he cannot be considered a "current" employee under the Non-Compete Agreement and, therefore, Chemstar's actions do not constitute a breach of contract.

Accordingly, the Court will grant Defendants' Motion to Dismiss Count II.

### c.   Count IV

In Count IV, U.S. Water alleges Chemstar is guilty of tortious interference with prospective economic relations because it intentionally interfered with the "prospective contracts and economic relationships" U.S. Water sought from Waterchem's former customers.  (Compl. ¶¶ 39-43).  U.S. Water has failed to allege, however, that Chemstar committed this interference through improper means.

Over the years, Maryland courts have attempted to maintain the balance between this tort and typical business competition. See, e.g., Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc., 650 A.2d 260, 269 (Md. 1994).  With this in mind, Maryland courts have "refused to adopt any theory of tortious interference with contract or with economic relations that 'converts a breach of contract into an intentional tort.'"  Id.

at 269-70 (quoting K&K Mgmt., 557 A.2d at 981). U.S. Water's tortious interference with prospective economic relations claim requires a showing of tortious intent and improper conduct. Id. at 271 (citing Macklin v. Robert Logan Assocs., 639 A.2d 112, 121 (Md. 1994)). Of particular import to this case is the notion that, "[s]imply because a person induces another to exercise an existing right to terminate a contract, even if that person's intention with regard to one of the parties to the contract is tortious, does not make it actionable. That is, his or her conduct is not thereby rendered improper or wrongful as a matter of law." Goode v. Am. Veterans, Inc., 874 F.Supp.2d 430, 447 (D.Md. 2012) (quoting Macklin, 639 A.2d at 119).

There is nothing in the Complaint to support the tort alleged in Count III. Although U.S. Water alleges Chemstar acted with the requisite intent, it does not sufficiently allege that Chemstar induced these Waterchem customers through improper means.

Therefore, the Court will grant Defendants' Motion as to Count IV.

## B.   U.S. Water's Motion for Expedited Discovery

### 1.   Standard of Review

U.S. Water moves for limited expedited discovery for the purpose of preparing a preliminary injunction motion. Rule 26(d)(1) provides, "A party may not seek discovery from any

source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."   Moreover, Local Rule 104.4, prohibits discovery from commencing prior to the court entering a scheduling order.

### 2.   Analysis

In its Motion, U.S. Water avers that it has lost four additional long-term customers since filing the Complaint, resulting in lost annual revenue of approximately $375,000. U.S. Water speculates, based on circumstantial evidence, that Defendants' actions caused the loss of these customers.   It seeks limited expedited discovery for the purpose of corroborating that circumstantial evidence of wrongdoing, thereby providing a direct factual basis for a preliminary injunction.   U.S. Water's Motion will be denied.

In terms of timing, U.S. Water avers that the only thing hindering it from serving Defendants with the discovery attached to its Motion is the fact that the Rule 26(f) conference has not been completed, which is delayed by the Court's failure to issue a scheduling order.   Although U.S. Water is correct that Defendants' Answer will be due fourteen days after the Court issues this decision, a preliminary scheduling order will issue immediately thereafter, thereby triggering Rule 26(f) and removing the barrier Local Rule 104.4 constructs.   Therefore,

granting U.S. Water's Motion to Expedite Discovery at this juncture is not necessary.

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, grant in part and deny in part Defendants' Motion to Dismiss Complaint.  (ECF No. 16).  Counts II and IV will be dismissed, but Counts I and III remain.  The Court will deny U.S. Water's Motion for Expedited Discovery.  (ECF No. 23).


Entered this 11th day of August, 2014


                              _____/s/_____
                              George L. Russell, III
                              United States District Judge